UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| ATLANTA LIGHT BULBS, INC., | ) | |
| | ) | CASE NO. 22-52950-pmb |
| Debtor. | ) | |

**RESPONSE OF JESSE ROOT TO MOTION OF TANDEM BANK FOR RELIEF FROM STAY**

COMES NOW Jesse Root, through his undersigned counsel, and files this response to the *Motion for Relief from the Automatic Stay* (Doc. No. 33; the "Motion for Relief") filed by Tandem Bank on June 8, 2022, respectfully showing the Court as follows

**FACTS**

1. Jesse Root's father, Gary Root, founded Atlanta Light Bulbs, Inc. ("ALB") approximately 41 years ago in 1981.

2. ALB was a successful business for decades, with a large customer base and innovative products. ALB sold such products as specialty lamps, projector lamps, medical lamps, miniature lamps, light fixtures, and lighting installations, and moved into newer products such as LED lighting as they entered the market.

3. In 1998, ALB launched a website, becoming one of the first companies in Atlanta to offer its inventory and services online.

4. ALB has been known in the lighting industry for decades, including due to the participation of the Root family in industry groups. Gary Root served on various industry boards and committees over the years, including The National Association of Independent Lighting Distributors, where he served on the board from 2000 through 2006 and where he served as President from 2004 through 2005.

1

5. As ALB grew, it needed a larger facility and it moved in the early 1990s to a lighting showroom and warehouse space located at 2109 Mountain Industrial Boulevard, Tucker, Georgia (the "ALB Premises")

6. Jesse Root worked in the family business that his father had founded beginning in approximately 2008, moving from being an account manager, to a sales manager, to a co-owner and the Vice President of Sales who supervised all sales activity for ALB. Jesse Root also participated in industry events, and is known in the industry for seeking cutting edge solutions for customers.

7. Gary Root died in 2017 after a hard battle with a long-term illness.

8. After his father's death in 2017, 50% of ALB was sold by Mr. Root's brother to Jessica Mendoza ("Ms. Mendoza") who became the CEO of ALB.

9. In the capacity of also being a fifty percent (50%) owner of ALB, Jesse Root raised questions with Ms. Mendoza about how the finances of ALB were being handled and requested access to certain financial data that was not being provided by Ms. Mendoza. In response, Ms. Mendoza fired Mr. Root from ALB in 2021.

10. Ms. Mendoza hired her boyfriend, Robert Taitz ("Mr. Taitz"), to work for ALB.

11. Ms. Mendoza also hired her family members and/or Mr. Taitz's family members to work for ALB.

12. After Mr. Root's termination from ALB, Mr. Root engaged legal counsel to assist in reviewing certain activities of Ms. Mendoza, Mr. Taitz, and ALB, including their uses of funds of ALB which had largely been concealed from Mr. Root despite his 50% ownership of the company.

13. Legal counsel engaged Mr. Bill Jennings ("Mr. Jennings") to assist in that process. Mr. Jennings is a forensic accountant, certified fraud examiner, and private investigator, with over 40 years of experience in forensic investigations and fraud investigations.

14. Mr. Jennings conducted an investigation and review of certain financial matters of Ms. Mendoza, Mr. Taitz, Mr. Root, and ALB. That process included reviewing certain financial records of ALB for transactions involving insiders of ALB.

15. Mr. Jennings determined, based on somewhat limited data, that Ms. Mendoza was paid at least $556,000.00 by ALB during the time period from October 9, 2019 to August 16, 2021.

16. Mr. Jennings determined, based on that same somewhat limited data, that Mr. Taitz was paid at least $1,271,323.00 by ALB during that same time period.

17. Mr. Jennings is prepared to testify to his investigative process and his findings at a hearing on the Motion for Relief.

18. Mr. Jennings determined, based on that same data, that Mr. Root had received only $110,000 from ALB during the same time period, despite being a full-time senior employee, the Vice President in charge of all sales, and a 50% owner of the company.

19. During the same time period that Ms. Mendoza and Mr. Taitz took at least One Million Eight Hundred Twenty-Seven Thousand Three Hundred Twenty-Three Dollars ($1,827,323.00) out of ALB (and possibly more since complete records have not yet been obtained), they were not making necessary payments to Tandem Bank and to trade creditors. Tandem Bank ultimately sued ALB, and various trade creditors instituted this involuntary bankruptcy case.

20. Mr. Root was financially harmed by the foregoing actions. Mr. Root had prepared a lawsuit against Ms. Mendoza, Mr. Taitz, and was considering including ALB in that Complaint

3

when Mr. Root learned of the filing of the involuntary bankruptcy case against ALB, for which reason he held off on filing his lawsuit.

21. An unsecured creditors committee was appointed in this case very recently, on June 8, 2022. That committee has only been in existence for a matter of days at this point. However, Mr. Root understands that the unsecured creditors committee intends to move quickly for appointment of a Chapter 11 Trustee.

22. Mr. Root believes that ALB could be a successful business, under appropriate management, in light of its decades of experience in the lighting industry, its reputation in the industry (although now somewhat damaged by recent actions), and the relationships with customers and vendors that could be restored under proper management.

23. If a Chapter 11 Trustee were to be appointed by the Court, Mr. Root is prepared to meet with the Chapter 11 Trustee and to assist him or her.

24. Tandem Bank claims a first-position security interest on substantially all property of ALB. If the Motion for Relief is granted, Tandem Bank would be able to pursue non-bankruptcy collection remedies against ALB that would likely result in the cessation of all business of ALB.

25. Undersigned counsel drove to the Premises on June 8, 2022, in order to ascertain whether activity was being conducted at ALB's Premises. At that time, the "OPEN" sign by the front door was illuminated, there were a number of vehicles in the parking lot, and the receiving and shipping bays of the building were open for incoming and outgoing orders. The undersigned counsel took photographs depicting that situation, which were filed with Mr. Root's response to Tandem Bank's motion to dismiss the bankruptcy cases as the following exhibits:

a. Photograph of address marker sign for the Premises, marked as **Exhibit "A"** thereto;

b. Photograph of front door the Premises, marked as **Exhibit "B"** thereto, in which the "OPEN" sign is visible to the right of the door if the photograph is enlarged;

c. Photograph of side door entrance to lighting showroom at the Premises, marked as **Exhibit "C"** thereto;

d. Photograph of an open receiving bay door and open outgoing freight door at the Premises, marked as **Exhibit "D"** thereto;

e. Photograph of an open showroom pickup door at the Premises, marked as **Exhibit "E"** thereto; and

f. Photograph of parking lot of the Premises, marked as **Exhibit "F"** thereto, showing multiple vehicles at the Premises.

26. Undersigned counsel performed an internet search for the term "Atlanta Light Bulbs" using the Google search engine on June 10, 2022. At that time, the website for ALB was one of the first results that came up for that search. The website's url, or address, is: www.atlantalightbulbs.com  The website remains functional. Undersigned counsel printed representative screenshots from several subpages of that website, which were filed with Mr. Root's response to Tandem Bank's motion to dismiss the bankruptcy case as the following exhibits:

a. Homepage of the ALB website, marked as **Exhibit "G"** thereto, showing links to product offerings;

b. About Us page of the ALB website, marked as **Exhibit "H"** thereto, referencing the family history of ALB, including references to Gary Root; and

    c.    Location page of the ALB website, marked as **Exhibit "I"** thereto, and listing the same location as the Premises that undesigned counsel visited and photographed on June 8, 2022.

Each screenshot from the ALB website bears the time and date on which it was accessed in the upper left-hand corner of the image.

### ARGUMENT AND CITATION OF AUTHORITIES

Granting stay relief to a secured creditor at this early juncture is not appropriate for the following reasons.

**I.    There are remedies other than stay relief to address Tandem Bank's goals.**

    a.    **Protection of collateral through cash collateral restrictions.**

Mr. Root understands that Tandem Bank seeks to protect its collateral from dissipation. That goal can be accomplished through the bankruptcy case. For instance, Tandem Bank has sought an order prohibiting ALB from using cash collateral. Entry of such an order, with broad protective terms, would protect Tandem Bank. Even if ALB sells inventory to customers, cash collateral restrictions can protect the proceeds from dissipation. *See* 11 U.S.C. § 363(c)(2) (restricting use of cash collateral). If ALB's current management flaunts such an order, a quick contempt proceeding can be set.

    b.    **Protection of collateral through appointment of Chapter 11 Trustee.**

Mr. Root understands that the newly constituted unsecured creditors committee intends to move quickly for appointment of a Chapter 11 Trustee. The appointment of such a fiduciary would protect Tandem Bank's collateral, without stay relief.

    c.    **Obtaining financial information about ALB.**

If the bankruptcy case continues, the Court can compel compliance by ALB's existing management with the required procedures for the case to go forward, including filing Schedules, attending a Section 341 meeting of creditors and testifying there under oath, responding to Rule 2004 orders, and similar matters. Or, if the Court replaces current management with a Chapter 11 Trustee, a Chapter 11 Trustee would take possession of the company's books and electronic records, and could provide the necessary information to Tandem Bank and other creditors.

**II.     Bankruptcy law provides avenues to benefit all creditors.**

In the non-bankruptcy context, the only creditor that currently stands to benefit from pursuing ALB is Tandem Bank due to its pre-bankruptcy lien. In the bankruptcy context, other creditors may receive some recovery. That broader recovery could arise from avoidance action recoveries, or from proceeds derived from operating the business, or from a sale of the business as a going concern, or some combination of such actions authorized by bankruptcy law.

The bankruptcy process authorizes sales of assets free and clear of liens. *See* 11 U.S.C. § 363(f). That process has been utilized to sell the elements of a business that capture going concern value – such as, the business' name, its website, its customer list, its vendor list, its executory contracts, etc.

In this instance, ALB's 40-year history in the industry may give substantial value to the name, website, customer list, etc. (even after recent impairments to value, as a change of management occurring through a Section 363 sale might alter perceptions of recent events). That value is preserved by continuing the operations of the company, as if the website goes down, or the company is closed, the market may perceive the loss of continuity as a reason to look elsewhere.

In that sense, bankruptcy law may provide an avenue to realize going concern value that is lost if the Motion for Relief is granted at this early juncture and a single creditor seizes all assets.

### III. Continuation of the stay as to Tandem Bank at least a short time does not cause undue prejudice.

Mr. Root understands that the unsecured creditors committee intends to file a motion seeking appointment of a Chapter 11 Trustee in the very near future. In email communications with chambers, the Court indicated that a hearing could be held in this case on June 21, 2022. In this situation, there is a very recently appointed unsecured creditors committee that has indicated an intent to take quick action, which would likely occur quicker than Tandem Bank could obtain relief through non-bankruptcy processes if the Motion for Relief were to be granted. During that short time period, the Court can enter the order restricting the use of cash collateral by ALB, without prejudice to use of cash collateral by a Chapter 11 Trustee if later approved by the Court. Continuing the stay of non-bankruptcy action for at least a short time is appropriate in this context.

### CONCLUSION

The Motion for Relief should be denied for several reasons: (i) stay relief would benefit solely Tandem Bank, whereas continuation of the stay may benefit all creditors; (ii) stay relief would also likely result in the quick cessation of all business of ALB, a company with over four decades of experience in its industry, creating a situation whereby going concern value is lost; (iii) Tandem Bank's goals can be addressed through the bankruptcy case, and in various respects the pendency of the bankruptcy case provides superior remedies to non-bankruptcy procedures.

This 10th day of June, 2022.

[signature follows]

Respectfully submitted,

ROBL LAW GROUP LLC

/s/ Michael Robl
Michael D. Robl
Georgia Bar No. 610905

3754 Lavista Road, Suite 250
Tucker, GA 30084
(404) 373-5153 (telephone)
(404) 537-1761 (facsimile)
michael@roblgroup.com (e-mail)

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| ATLANTA LIGHT BULBS, INC., | ) | |
| | ) | CASE NO. 22-52950-pmb |
| Debtor. | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that I have on this day electronically filed the foregoing document using the Bankruptcy Court's Electronic Case Filing program, which sends a notice of this document and an accompanying link to this document to the following parties who have appeared in this case under the Bankruptcy Court's Electronic Case Filing program, and that I served the foregoing document by depositing a copy of the same in the United States mail with adequate postage on the following:

- **John C. Cannizzaro**     john.cannizzaro@icemiller.com
- **Thomas Dworschak**     thomas.w.dworschak@usdoj.gov, ltctommyd@aol.com
- **Kathleen G. Furr**     kfurr@bakerdonelson.com, lgoforth@bakerdonelson.com;ali.lowe@bakerdonelson.com
- **Ronald A. Levine**     rlevine@levineblock.com, rlevine682@gmail.com
- **Scott B. McMahan**     ecf@poolehuffman.com, scott@poolehuffman.com
- **Leslie M. Pineyro**     lpineyro@joneswalden.com, jwdistribution@joneswalden.com;ljones@joneswalden.com;cmccord@joneswalden.com; arich@joneswalden.com;ewooden@joneswalden.com
- **Todd J Poole**     todd@poolehuffman.com
- **Todd H. Surden**     todd.surden@hartmansimons.com, deloris.person@hartmansimons.com
- **Jason M. Torf**     Jason.Torf@icemiller.com
- **Kristen A. Yadlosky**     kristen.yadlosky@hartmansimons.com, deloris.person@hartmansimons.com

Atlanta Light Bulbs, Inc.
2109 Mountain Industrial Blvd
Tucker, GA 30084

This 10th day of June, 2022.

ROBL LAW GROUP LLC

/s/ Michael Robl
Michael D. Robl
Georgia Bar No. 610905

10

3754 Lavista Road, Suite 250
Tucker, GA 30084
(404) 373-5153 (telephone)
(404) 537-1761 (facsimile)
michael@roblgroup.com (e-mail)