**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| ATLANTA LIGHT BULBS, INC., | ) | CASE NO.: 22-52950-PMB |
| | ) | |
|     Debtor. | ) | |
| | ) | |
| TANDEM BANK, | ) | |
| | ) | |
|     Movant, | ) | |
| | ) | |
| v. | ) | CONTESTED MATTER |
| | ) | |
| ATLANTA LIGHT BULBS, INC. | ) | |
| | ) | |
|     Respondent. | ) | |

**OBJECTION TO MOTION TO DISMISS BANKRUPTCY CASE**

COMES NOW The Official Committee of Unsecured Creditors of Atlanta Light Bulbs, Inc. (the "Committee"), by its undersigned counsel, and files this objection to Tandem Bank's (the "Bank") *Motion to Dismiss Bankruptcy Case* (the "Motion to Dismiss") [Docket No. 23] and the Bank's *Supplement to Motion to Dismiss Bankruptcy Case (Requesting Conversion to Chapter 7 as Alternative Relief* [Docket No. 40] (the "MTD Supplement," and collectively with the Motion to Dismiss, the "Motion to Dismiss or Convert"). In support hereof, the Committee respectfully states as follows:

**Preliminary Statement**

1. The Bank, the purported secured creditor in this case, seeks to pull the rug out from under unsecured creditors before this bankruptcy case even has a chance to move forward in order to proceed with its own devices in state court. In essence, the Bank wants a forum – state court - where only it can collect on the debt owed to it without regard to the likelihood that leaving this case in bankruptcy is likely to result in a distribution not just to the secured creditor, but to <u>all</u>

creditors. Of course, the Bank is concerned only with its own recovery. This Court, however, should take a more holistic view of the facts and circumstances present that warrant keeping this case in chapter 11 and appointing a chapter 11 trustee so that all creditors benefit.

2. The debtor, Atlanta Light Bulbs, Inc. (the "Debtor") has not shown up in this case in any way. Notwithstanding clear deadlines to do so, the Debtor has failed to respond to the involuntary petition, filed a creditor matrix, schedules or statement of financial affairs, and to the best of the Committee's knowledge, to respond to Rule 2004 discovery issued by the Bank. As a result, the Bank would like this bankruptcy case dismissed so that it can pursue its state court remedies for its own benefit and without regard to the likelihood that dismissal of this case would deprive unsecured creditors of the opportunity for any recovery on the millions of dollars they are owed collectively. There are a number of problems with the Bank's request. First, the Bank's request is premature. This case is in its infancy and has not had a meaningful opportunity to proceed. The fact that the Debtor has not shown up militates in favor of denying or deferring the Bank's Motion to Dismiss or Convert because the scope of assets, liabilities and financial affairs of the Debtor is unknown at this stage. Creditors and other parties-in-interest are entitled an opportunity to ascertain the scope of the Debtor's assets, liabilities and financial affairs rather than having a meaningful opportunity for recovery stripped from them through premature dismissal of this case.

3. In addition, there is significant value in this Debtor and in the bankruptcy process for all creditors: both secured and unsecured. The Bank, however, seeks to shield this Court's view from the significant value that results from keeping this bankruptcy case alive and the real probability that unsecured creditors (and the bank) would benefit from this bankruptcy process.

4. Specifically, the Committee understands that an investigation undertaken by the 50% shareholder of the Debtor has uncovered significant transfers to insiders of the Debtor in the past two years that are actionable and subject to clawback for the benefit of the estate and its creditors. The Committee understands that the transfers discovered to date, when recovered by the estate, will dwarf the amount owed to the Bank, thus paying the Bank in full and providing a meaningful distribution for unsecured creditors. And that is just the tip of the iceberg. Through the bankruptcy process, additional transfers and other potential causes of action might be discovered through further investigation that will provide additional avenues for recovery by unsecured creditors.

5. In addition, the Debtor itself has significant value as a going concern. Various constituents who have deep historical dealings with, and knowledge of, the Debtor and its operations have offered to the Committee that the Debtor's business has real value in the lighting industry. Some of the parties who have offered this viewpoint include multiple members of the Committee who have done business with the Debtor for years and who have similar, or even virtually identical, businesses, know the industry, and know that there is real value in the Debtor's business. In addition, the 50% shareholder who conducted the investigation noted above is the former Vice President of Sales for the Debtor who worked there since 2008. He has deep historical and industry knowledge and experience and the Committee understands it to be his belief that with better management, the Debtor's business is very valuable in the industry and can either be reorganized or sold in a manner that would result in a meaningful distribution to unsecured creditors.

6. There is a better way than dismissal or conversion to realize the significant value for unsecured creditors in this Debtor and the bankruptcy process: appointment of a chapter 11

trustee. The Bank's concerns about protection of its collateral can and would be addressed by the appointment of a competent chapter 11 trustee with the right experience in turnarounds, turnaround management and restructuring financial advisory services. And contrary to the Bank's position, dismissal of this case would inure to the benefit of only a single creditor: the Bank. Unsecured creditors would be left to their own state court devices if this case were dismissed and, given the mismanagement and malfeasance perpetrated by the Debtor's current management, unsecured creditors would very likely see no recovery outside of bankruptcy. Therefore, the best interest of creditors is served not by dismissal or conversion, but rather by denying the Bank's Motion to Dismiss or Convert, allowing this case to proceed as a chapter 11 bankruptcy, and appointing a chapter 11 trustee who can protect the Bank's collateral and properly manage the business through a successful reorganization or sale that results in value for <u>all</u> creditors, not just the Bank.

## **Background**

7. The Debtor is a Georgia corporation is in the lighting business and operating at a business location of 2109 Mountain Industrial Blvd., Tucker, Georgia 30084.

8. Each of the members of the Committee was a supplier to the Debtor and is owed significant amounts on account of unpaid invoices for goods sold and delivered.

9. For many months prior to filing this involuntary bankruptcy case, the members of the Committee collectively sought to negotiate with the Debtor in an effort to have those outstanding debts satisfied. In order to engage in a meaningful and effective negotiation, the members of the Committee sought certain customary financial information from the Debtor. For months, information was promised to be forthcoming, but the Committee members were never provided with any of the requested information. In addition, they were not paid, and no meaningful

payment proposal was ever made. As a result, the members of the Committee filed this involuntary bankruptcy proceeding.

## Procedural History

10. On April 15, 2022 (the "Petition Date"), the members of the Committee, as petitioning creditors, filed an involuntary petition [Docket No. 1] (the "Involuntary Petition") against the Debtor under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*. (the "Bankruptcy Code").

11. On May 23, 2022, an Order for Relief Under Chapter 11 (the "Order for Relief") [Docket No. 21] was entered by the Court.

12. It has been less than three weeks since the Order for Relief was entered.

13. On June 6, 2022, the Committee was formed.

## Facts Supporting Denial of the Motion to Dismiss or Convert

14. In support of its objection to the Motion to Dismiss or Convert, the Committee refers to and incorporates by reference the factual averments set forth in the *Response of Jesse Root to Motion of Tandem Bank to Dismiss Case* [Docket No. 41] ("Jesse's Response").

15. Jesse Root ("Jesse") is a son of the Debtor's founder and a 50% shareholder of the Debtor. Jesse's father Jesse began working at the Debtor in 2008, ultimately becoming its Vice President of Sales in charge of the entire sales function for the Debtor. As such, Jesse has a deep and historical understanding of the Debtor's business operations. Jesse's father, Gary, had been the sole shareholder of the Debtor until the shares were transferred to Jesse and his brother as equal 50% owners.

5

16. In 2017, when Jesse's father passed away, Jesse's brother sold his 50% ownership interest to Jessica Mendoza who remains a 50% shareholder with Jesse. Upon acquiring her ownership stake, Jessica also took on the role of CEO.

17. After Ms. Mendoza acquired her shares and took on a management role at the company, Jesse began to notice various financial irregularities at the business. As a result, in his role as a 50% shareholder, Jesse requested that Ms. Mendoza provide certain financial information and access to the company's books and records. Rather than share the requested financial information, Ms. Mendoza fired Jesse from his longtime role with the company he co-owns.

18. Subsequently, Jesse engaged legal counsel which hired a private investigator to investigate use of funds by the Debtor. The investigator's findings are alarming. The Committee understands that the investigator uncovered improper transfers of funds from the Debtor to insiders in the past approximately one-and-one-half years totaling in excess of $1.8 million. Specifically, of the $1.8 million that was transferred to insiders during that time period, nearly $600,000 went to Ms. Mendoza and another more than $1.2 million went to her boyfriend, Robert Taitz. It is noteworthy that, on information and belief, Ms. Mendoza never received anywhere near $600,000 in compensation for her role at the company since she acquired her shares and began working at the business. In addition, payments to Ms. Mendoza totaling that amount cannot be distributions because Jesse, as an equal shareholder with Ms. Mendoza, would have been entitled to receive the same distributions as her, but he did not. Further, the more than $1.2 million that was transferred to her boyfriend was not, on information and belief, earned compensation or payments in satisfaction of any debt owed by the Debtor to Mr. Taitz. As such, these payments would appear to be fraudulent transfers that are subject to avoidance and recoverable for the benefit of the estate and its creditors. As stated above, this amount far exceeds the approximately $600,000 – 700,000

the Committee understands the Bank claims to be owed. Further investigation during the course of this bankruptcy proceeding could reveal additional recoveries that would be available to the estate and its creditors through other avoidance actions.

19.     Aside from transfers, there is ample information to conclude that the Debtor continues to operate.[1] As noted in Jesse's Response, Jesse and his counsel have independently undertaken efforts to confirm the continued operation of the Debtor's business. Details regarding their informal investigation are provided in Jesse's Objection. In addition, members of the Committee have both driven to and observed obvious business activities taking place at the Debtor's main facility and have placed phone calls to the Debtor's business to confirm willingness and ability to continue to take orders.

20.     The members of the Committee – each a vendor with a longstanding business relationship with the Debtor – have been engaged in business in the lighting industry for years and have a deep knowledge of the industry. As a result of that deep knowledge and experience of the industry, and specifically of the Debtor's business, the Committee believes that there is real value in the business as a going concern – value that can be realized through a reorganization or sale of the business, provided that competent and experienced management is put in place to run the Debtor through a chapter 11 process until a reorganization or sale. In addition, the Committee understands that Jesse, with his deep understanding of the Debtor's business, his intimate knowledge of the industry due to his family's involvement for decades, and his customer relationships stemming from his role in charge of sales for years at the company, is willing and interested in assisting a chapter 11 trustee in running the business to a reorganization or sale, and

---

[1] Of course, it supports the immediate appointment of a chapter 11 trustee if the Debtor continues to operate without accounting to the estate, which the Committee believes might be the case.

7

that he also would be willing to discuss a role with the company with a buyer which further enhances the company's value and saleability.

### Legal Argument

21. Under § 1112(b)(1) of the Bankruptcy Code:

> Except as provided in paragraph (2) and subsection (c) [of Section 1112], on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

22. The movant bears the initial burden of proof by a preponderance of the evidence. *In re Global Emergency Res., LLC*, 563 B.R. 76, 79 (Bankr. S.D. Ga. 2016).

23. Under § 1112(b)(2), conversion or dismissal is not appropriate, despite a finding of cause, if the court finds and identifies (1) "unusual circumstances" establishing that conversion or dismissal is not necessarily in the best interest of creditors and the estate, and (2) the Debtor or another party in interest establishes the following:

> (A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and
>
> (B) the grounds for converting or dismissing the case include an act or omission of the debtor other than [substantial or continuing loss to or diminution of the estate and the absence of reasonable likelihood of rehabilitation] —
>
> (i) for which there exists a reasonable justification for the act or omission; and
>
> (ii) that will be cured within a reasonable period of time fixed by the court.

11 U.S.C. § 1112(b)(2).

8

24. Together, these sections delineate the burdens of proof placed upon the parties. The movant must first establish cause by a preponderance of the evidence. *See* § 1112(b)(1). Once cause has been established, the burden shifts to the Debtor or any other party-in-interest who must establish both that unusual circumstances exist, which justify the case continuing in chapter 11, and that the elements of 11 U.S.C. § 1112(b)(2)(A) & (B) are satisfied. *See* § 1112(b)(2).

25. Here, the Motion to Dismiss or Convert should be denied because "cause" does not exist to convert or dismiss this case. Even if this Court were to find that "cause" exists, the appointment of a chapter 11 trustee is in the best interests of creditors and the estate rather than conversion or dismissal. And even if this Court were to find otherwise – which the Committee argues it should not - unusual circumstances exist that make the appointment of a chapter 11 trustee in the best interests of creditors, it is reasonable that a plan can be confirmed within the timeframe established by the Bankruptcy Code, and the act or omission of the Debtor does not involve substantial diminution of the estate, is justified and can be cured by the appointment of a chapter 11 trustee.

**A.    The Best Interest of Creditors and the Estate Dictate that a Trustee Should be Appointed Pursuant to 11 U.S.C. § 1104(a).**

26. In support of its argument that the best interests of creditors dictate the appointment of a chapter 11 trustee, the Committee incorporates by reference the factual background and legal arguments set forth in its Motion to Appoint Chapter 11 Trustee that the Committee anticipates filing on June 13.

**B.    Unusual Circumstances Exist that Preclude Dismissal or Conversion of the Bankruptcy Case.**

27. Section 1112(b) of the Bankruptcy Code does not define unusual circumstances, "but the phrase contemplates conditions that are not common in chapter 11 cases." *In re New*

9

*Towne Development, LLC*, 404 B.R. 140, 146 (Bankr. M.D. La 2009) (citing *In re Pittsfield Weaving Co.,* 393 B.R. 271, 274 (Bankr. D.N.H. 2008)).

28. Moreover, "[c]ourts have much discretion in determining whether there are unusual circumstances that weigh against conversion or dismissal." *Id*. (citing *In re The 1031 Tax Group, LLC,* 374 B.R. 78, 93 (Bankr. S.D.N.Y. 2007) (section 1112(b) "explicitly provides for this discretion where a court is able to identify 'unusual circumstances ... that establish that the requested conversion is not or dismissal is not in the best interests of creditors and the estate' ")).

29. Consistent with the requirements of § 1112(b)(2), unusual circumstances exist that justify the appointment of a chapter 11 trustee over conversion or dismissal:

- No representative of the Debtor has shown up in this proceeding since its inception;

- No attorney has appeared for the Debtor in this proceeding;

- The Debtor appears to be operating;
    - Daily operations appear to be ongoing at the Debtor's business location;
    - Phones are being answered by Debtor's employees;
    - Debtor's employees appear to be engaging with prospective customers.

- On information and belief, Ms. Mendoza is overseeing operations and dissipating estate assets;

- On information and belief, the Debtor, at the direction of Ms. Mendoza, transferred approximately $1,800,000 to insiders within approximately one-and-a-half years prior to the Petition Date for no consideration; and

- Apart from the significant monetary transfers, the Committee has learned that office furniture and related assets were recently removed from office space previously occupied by the Debtor.

30. The foregoing is likely just the tip of the iceberg as the Committee only learned of many of these facts very recently. It is certainly possible – even likely given the malfeasance already uncovered – that the Committee and other parties-in-interest will uncover additional alarming facts – and avenues for recovery by the estate and its creditors – if given the opportunity

to conduct a meaningful investigation. Accordingly, the Bank's alleged secured claim of approximately $600,000 is only a fraction of the assets that may be recovered in this case.

31. Given these unusual circumstances, it is in the best interests of creditors to appoint a chapter 11 trustee who can take over the Debtor's assets and oversee operations through a reorganization or sale so that there is a meaningful opportunity for all creditors – not just the secured creditor – to realize a recovery. With a competent and experienced chapter 11 trustee in place, it is reasonable that a chapter 11 plan can be confirmed (or a sale under § 363 executed) within the timeframe set forth in the Bankruptcy Code. In addition, the remaining prongs of § 1112(b)(2) are satisfied. The act or omission of the Debtor does not involve substantial diminution of the estate; rather, the Debtor simply has not shown up, or as the Bank alleges more specifically, the Debtor has not responded to the Bank's discovery under Bankruptcy Rule 2004. The Debtor's failure to respond is justified given the context that no one from the Debtor has shown up in this case. And most importantly, the Debtor's act or omission – its failure to respond to the Bank's discovery - can be cured by the appointment of a chapter 11 trustee who would promptly take control of the Debtor and its assets, including its books and records, and would be in a position to respond to the Bank's discovery.

32. Based on the foregoing, the facts and circumstances of this case strongly suggest that the Court and parties-in-interest should be given at least some meaningful time to investigate the Debtor's operational status and the Debtor's finances pre and post-petition – the very short time since the Order for Relief is inadequate. *See In re New Towne Dev., LLC*, 404 B.R. 140, 148 (concluding that the evidence supports a finding and conclusion that because of "unusual circumstances," the best interest of the creditors and the estate are not served by dismissing or converting the case).

11

C.  **Confirming a Chapter 11 is Feasible.**

33. Confirming a chapter 11 plan within the timeframe set forth in the Bankruptcy Code is reasonable with the appointment of a competent and experienced chapter 11 trustee. It is the Committee's sound belief – given the knowledge and experience that its members have in the lighting industry and working with the Debtor specifically – that the Debtor's operations, assets, and customer relationships have meaningful value and can offer the opportunity for an effective reorganization or going concern sale. *See id.* (Concluding that the evidence did not establish that confirming a chapter 11 plan is not feasible since there was a possibility of equity in the debtors' assets). At this point in the case, very little concrete information is known other that as set forth above. Appointing a chapter 11 trustee would allow the opportunity for creditors to learn more about the real value of the Debtor's operations and the extent of malfeasance by its current management that could lead to causes of action with value to the estate.

34. Simply put, dismissing this case allows a meaningful opportunity for recovery only by the Bank. Keeping this case alive allows a meaningful opportunity for a real recovery for <u>all</u> creditors. As set forth above, the known existence of at least $1.8 million in fraudulent transfers alone justifies denial of the Motion to Dismiss or Convert as the bankruptcy forum is the best forum for such causes of action to be asserted and recoveries to be obtained for the benefit of all creditors rather than leaving creditors individually to their own devices in state court.

D.  **Tandem Bank's Grounds for Conversion and Dismissal Can be Cured Through the Appointment of a Chapter 11 Trustee.**

35. Here, the purported basis for conversion and dismissal include:

    a. "No lawyer, officer, or person in control of Debtor has appeared on behalf of Debtor. Accordingly, no fiduciary is actively managing the bankruptcy estate or performing the duties of a debtor in possession." *Motion to Dismiss,* ¶ 17;

12

    b.    "(i) Debtor is not performing its statutory duties and no fiduciary is serving the estate; (ii) Debtor has failed to participate in this Bankruptcy; (iii) Debtor appears to be using Cash Collateral without authority in violation of 11 U.S.C. §§363(c)(2) and (4); (iv) the estate appears to be administratively insolvent; (v) Debtor is not represented by counsel and an entity cannot be a party to a bankruptcy case without an attorney; and (vi) all of Debtor's assets are fully encumbered by the secured claim of Tandem Bank resulting in no distribution to unsecured creditors or any junior lien holders" *Motion to Dismiss,* ¶ 21; and

    c.    "Additionally, Debtor ceased operating around the time of the filing of the Involuntary Petition and is not protecting the estate's assets. The Office Premises has been cleaned out, and the location of the previous contents of the same are unknown." *MTD Supplement,* ¶ 19.

36. None of these facts constitutes "cause" for conversion or dismissal:

- "No lawyer, officer, or person in control of Debtor has appeared on behalf of Debtor. Accordingly, no fiduciary is actively managing the bankruptcy estate or performing the duties of a debtor in possession."

    o This can be cured through the appointment of a chapter 11 trustee which is in the best interest of creditors rather than conversion or dismissal which benefits only the Bank.

- "Debtor is not performing its statutory duties and no fiduciary is serving the estate[.]"

    o Can be cured through the appointment of a chapter 11 trustee.

- "Debtor has failed to participate in this Bankruptcy[.]"

    o Can be cured through the appointment of a chapter 11 trustee who would step into the role of a debtor-in-possession to oversee and manage the Debtor's operations and shepherd the Debtor through the bankruptcy process.

- "Debtor appears to be using Cash Collateral without authority in violation of 11 U.S.C. §§363(c)(2) and (4)[.]"

    o Can be cured through the appointment of a chapter 11 trustee who would step into the role of a debtor-in-possession with the ability to seek this Court's authority to use cash collateral and to provide adequate protection to the Bank.

- "The estate appears to be administratively insolvent[.]"

13

- o   This factual averment by the Bank is self-serving and without factual support.  Given that the Debtor has not shown up in this case or filed schedules, it is impossible to reach this conclusion.  Indeed, the Bank's self-serving conclusion is belied by the Bank couching its statement with the phrase "appears to be."  The significant facts discovered by Jesse, his counsel and the members of the Committee point to the Debtor having real going concern value that would contradict any assertion that this estate is administratively insolvent and that would create the likelihood that if this case were to proceed with a chapter 11 trustee, a meaningful distribution could become available to unsecured creditors (in addition to the Bank).

- "Debtor is not represented by counsel and an entity cannot be a party to a bankruptcy case without an attorney[.]"

    - o   Can be cured through the appointment of a chapter 11 trustee who would have the right to retain counsel with the approval of this Court.

- "[A]ll of Debtor's assets are fully encumbered by the secured claim of Tandem Bank resulting in no distribution to unsecured creditors or any junior lien holders[.]"

    - o   This factual averment by the Bank is self-serving and made without regard to the broader circumstances in this case.  Even if all of the Debtor's assets are fully encumbered by the Bank's purported lien (which has not been investigated by the Committee yet), it belies the bankruptcy process to conclude that a blanket lien precludes a distribution to unsecured creditors.  Based upon the facts and observations of the Committee noted above and the same from Jesse, it is absurd to conclude that there can be no distribution to unsecured creditors here solely on account of the fact that the Bank allegedly has a blanket lien.  To the contrary, the significant facts discovered by Jesse, his counsel and the members of the Committee point to the Debtor having real going concern value that would create the likelihood that if this case were to proceed with a chapter 11 trustee, a meaningful distribution could become available to unsecured creditors (in addition to the Bank), either through a plan of reorganization or a sale under § 363.

- "Additionally, Debtor ceased operating around the time of the filing of the Involuntary Petition and is not protecting the estate's assets.  The Office Premises has been cleaned out, and the location of the previous contents of the same are unknown."

    - o   There is no evidence that the Debtor has ceased operating.  As discussed above, the evidence actually points to the fact that the Debtor continues to operate (a fact that support not only denial of the Motion to Dismiss or Convert, but also appointment of a chapter 11 trustee given that the Debtor apparently continues to operate without accounting to the estate or reporting to this Court).  The Bank's comment that the Debtor's office space has been

14

cleaned out ignores the fact that the Debtor operates a warehouse / distribution / showroom space at another location which members of the Committee, Jesse and Jesse's counsel have observed to remain functioning as a business.

37. The appointment of a chapter 11 trustee will resolve the issues outlined above and ensures, among other things, that the estate will be preserved and there will be proper oversight of the performance of the Debtor's ongoing obligations.

## Conclusion

As expressed in this objection, the Committee believes that the best interest of creditors is served not by dismissal or conversion, but by appointment of a chapter 11 trustee, and the Committee therefore urges this Court to deny the Bank's Motion to Dismiss or Convert. At a minimum, however, this Court should defer consideration of the Bank's Motion to Dismiss or Convert until the Court has a full opportunity to hear and consider the Committee's request for appointment of a chapter 11 trustee. At that point, the Court will be in a better position to determine that appointment of a chapter 11 trustee – not conversion or dismissal – is, in fact, in the best interest of creditors.

For all of the foregoing reasons, the Committee request that this Court deny the Motion to Dismiss or Convert.

**WHEREFORE**, the Committee respectfully requests that this Court deny the Motion to Dismiss or Convert and grant the Committee such other and further relief as this Court deems just and appropriate under the circumstances.

15

Dated: June 12, 2022　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　THE OFFICIAL COMMITTEE OF UNSECURED
　　　　　　　　　　　　　　　　　　　　CREDITORS OF ATLANTA LIGHT BULBS, INC.


　　　　　　　　　　　　　　　　　　By: /s/Kathleen G. Furr
　　　　　　　　　　　　　　　　　　　　Kathleen G. Furr (GA Bar No. 589008)
　　　　　　　　　　　　　　　　　　　　BAKER DONELSON BEARMAN CALDWELL &
　　　　　　　　　　　　　　　　　　　　BERKOWITZ, PC
　　　　　　　　　　　　　　　　　　　　3414 Peachtree Road, N.E.
　　　　　　　　　　　　　　　　　　　　Atlanta, Georgia 30326
　　　　　　　　　　　　　　　　　　　　(404) 577-6000 (Telephone)
　　　　　　　　　　　　　　　　　　　　(404) 221-6501 (Facsimile)
　　　　　　　　　　　　　　　　　　　　kfurr@bakerdonelson.com

　　　　　　　　　　　　　　　　　　　　*[Proposed] Co-Counsel for the Official Committee
　　　　　　　　　　　　　　　　　　　　of Unsecured Creditors of Atlanta Light Bulbs, Inc.*

　　　　　　　　　　　　　　　　　　　　　　-and-

　　　　　　　　　　　　　　　　　　　　Jason M. Torf (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　　　Brian J. Jackiw (*pro hac vice* pending)
　　　　　　　　　　　　　　　　　　　　TUCKER ELLIS LLP
　　　　　　　　　　　　　　　　　　　　233 S. Wacker Dr.
　　　　　　　　　　　　　　　　　　　　Suite 6950
　　　　　　　　　　　　　　　　　　　　Chicago, Illinois 60606-9997
　　　　　　　　　　　　　　　　　　　　(312) 256-9432 (Telephone)
　　　　　　　　　　　　　　　　　　　　(312) 624-6309 (Facsimile)
　　　　　　　　　　　　　　　　　　　　jason.torf@tuckerellis.com
　　　　　　　　　　　　　　　　　　　　brian.jackiw@tuckerellis.com

　　　　　　　　　　　　　　　　　　　　*[Proposed] Co-Counsel for the Official Committee
　　　　　　　　　　　　　　　　　　　　of Unsecured Creditors of Atlanta Light Bulbs, Inc.*

# CERTIFICATE OF SERVICE

This is to certify that on June 12, 2022, I electronically filed the foregoing *Objection to Motion to Dismiss Bankruptcy Case* with the Clerk of Court using the CM/ECF system, which automatically sent e-mail notifications of such filing to the below listed attorneys of record:

Thomas Dworschak
Office of the U. S. Trustee
Room 362
75 Ted Turner Drive, SW
Atlanta, GA 30303
thomas.w.dworschak@usdoj.gov

Scott B. McMahan
Poole Huffman, LLC
Building J, Suite 200
3562 Habersham at Northlake
Tucker, GA 30084
ecf@poolehuffman.com

Todd J Poole
3562 Habersham at Northlake
Building J, Ste 200
Tucker, GA 30084
todd@poolehuffman.com

Todd H. Surden
Hartman Simons & Wood
400 Interstate North Parkway SE
Suite 600
Atlanta, GA 30339
todd.surden@hartmansimons.com

Ronald A. Levine
Levine & Block, LLC
P.O. Box 422148
Atlanta, GA 30342
rlevine@levineblock.com

Leslie M. Pineyro
Jones and Walden, LLC
699 Piedmont Avenue NE
Atlanta, GA 30308
lpineyro@joneswalden.com

Michael D. Robl
Robl Law Group LLC
Suite 250
3754 LaVista Road
Tucker, GA 30084
michael@roblgroup.com

Kristen A. Yadlosky
Hartman Simons & Wood
400 Interstate North Parkway SE
Suite 600
Atlanta, GA 30339
kristen.yadlosky@hartmansimons.com

and that I will also serve the below parties via USPS with proper postage affixed on June 13, 2022:

Atlanta Light Bulbs, Inc.
2109 Mountain Industrial Blvd
Tucker, GA 30084

American Express Travel Related Services Co., Inc.
c/o Zwicker and Associates, P.C.
Attorneys/Agents for Creditor
P.O. Box 9043
Andover, MA 01810-1041

| | |
|---|---|
| Bryan Kaplan<br>6065 Roswell Road, Suite 540<br>Atlanta, GA 30328 | CBC Lighting Inc.<br>Kaplan Legal Services, LLC<br>6065 Roswell Road, Suite 540<br>Atlanta, GA 30328 |
| Fanlight Corporation, Inc.<br>c/o Simpson, Uchitel & Wilson, LLP<br>P.O. Box 550105<br>Atlanta, GA 30355-2505 | Ford Motor Credit Company, LLC<br>Drawer 55-953<br>P.O. Box 55000<br>Detroit, MI 48255-0953 |
| Hatch Transformers, Inc., d/b/a Hatch Lighting<br>c/o Simpson, Uchitel & Wilson, LLP<br>P.O BOX 550105<br>Atlanta, GA 303055-2505 | Worldwide Specialty Lamp, LLC<br>c/o Bryan Kaplan, Esq.<br>6065 Roswell Road, Suite 540<br>Atlanta, GA 30328 |

By: /s/Kathleen G. Furr
Kathleen G. Furr (GA Bar No. 589008)

*[Proposed] Co-Counsel for the Official Committee of Unsecured Creditors of Atlanta Light Bulbs, Inc.*