**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| ATLANTA LIGHT BULBS, INC., | ) | CASE NO.: 22-52950-PMB |
| | ) | |
| Debtor. | ) | |

## MOTION FOR APPOINTMENT OF CHAPTER 11 TRUSTEE

COMES NOW, The Official Committee of Unsecured Creditors of Atlanta Light Bulbs, Inc. (the "Committee"), and moves this Court to authorize the appointment of a chapter 11 trustee pursuant to 11 U.S.C. § 1104(a) (the "Motion"). As grounds for such relief and in support of its motion, the Committee states as follows:

### INTRODUCTION

1. Section 1104(a) of the United States Bankruptcy Code[1] allows for the appointment of a trustee during a chapter 11 bankruptcy case before the confirmation of a plan (i) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case…; or (ii) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor. *See* 11 U.S.C. § 1104(a). Based on the facts, and for the reasons stated below, the appointment of a chapter 11 trustee is appropriate in this case for cause and based on the best interests of creditors.

---

[1] 11 U.S.C. §§ 101, *et seq*. (the "Bankruptcy Code").

**JURISDICTION**

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter constitutes a core proceeding pursuant to 28 U.S.C. § 157.

**PRELIMINARY STATEMENT**

3. The debtor, Atlanta Light Bulbs, Inc. (the "Debtor") has not shown up in this case in any way. Notwithstanding clear deadlines to do so, the Debtor has failed to respond to the involuntary petition, file a creditor matrix, schedules or statement of financial affairs, and to the best of the Committee's knowledge, to respond to Rule 2004 discovery issued by Tandem Bank (the "Bank"). Simply put, the Debtor has not participated in this case and has blown deadlines to file critical documents. The fact that the Debtor has not shown up militates strongly in favor of the appointment of a chapter 11 trustee. Creditors and other parties-in-interest are entitled an opportunity to ascertain the scope of the Debtor's assets, liabilities and financial affairs, and that cannot be done with a Debtor *in absentia*.

4. In addition, there is significant value in this Debtor and in the bankruptcy process for all creditors. Specifically, the Committee understands that an investigation undertaken by the 50% shareholder of the Debtor has uncovered significant transfers to insiders of the Debtor in the past two years that are actionable and subject to clawback for the benefit of the estate and its creditors. The Committee understands that the transfers discovered to date, when recovered by the estate, will dwarf the amount owed to the Bank, thus paying the Bank in full and providing a meaningful distribution for unsecured creditors. And that is just the tip of the iceberg. Through the bankruptcy process, additional transfers and other potential causes of action might be discovered through further investigation that will provide additional avenues for recovery by unsecured creditors.

5. In addition, the Debtor itself has significant value as a going concern, but it must be managed properly through the bankruptcy process in order for the estate and its creditors to realize that value. Various constituents who have deep historical dealings with, and knowledge of, the Debtor and its operations have offered to the Committee that the Debtor's business has real value in the lighting industry. Some of the parties who have offered this viewpoint include multiple members of the Committee who have done business with the Debtor for years and who have similar, or even virtually identical, businesses, know the industry, and know that there is real value in the Debtor's business. In addition, the 50% shareholder who conducted the investigation noted above is the former Vice President of Sales for the Debtor who worked there since 2008. He has deep historical and industry knowledge and experience and the Committee understands it to be his belief that with better management, the Debtor's business is very valuable in the industry and can either be reorganized or sold in a manner that would result in a meaningful distribution to unsecured creditors.

6. Appointment of a chapter 11 trustee is the best way to realize the significant value for creditors in this Debtor and the bankruptcy process. The appointment of a chapter 11 trustee who can properly manage the business through a successful reorganization or sale is in the best interests of creditors.

**BACKGROUND**

7. The Debtor is a Georgia corporation is in the lighting business and operating at a business location of 2109 Mountain Industrial Blvd., Tucker, Georgia 30084.

8. Each of the members of the Committee was a supplier to the Debtor and is owed significant amounts on account of unpaid invoices for goods sold and delivered.

9. For many months prior to filing this involuntary bankruptcy case, the members of the Committee collectively sought to negotiate with the Debtor in an effort to have those outstanding debts satisfied. In order to engage in a meaningful and effective negotiation, the members of the Committee sought certain customary financial information from the Debtor. For months, information was promised to be forthcoming, but the Committee members were never provided with any of the requested information. In addition, they were not paid and no meaningful payment proposal was ever made. As a result, the members of the Committee filed this involuntary bankruptcy proceeding.

## PROCEDURAL HISTORY

10. On April 15, 2022 (the "Petition Date"), the members of the Committee, as petitioning creditors, filed an involuntary petition [Docket No. 1] (the "Involuntary Petition") against the Debtor under chapter 11 of the Bankruptcy Code.

11. On May 23, 2022, an Order for Relief Under Chapter 11 (the "Order for Relief") [Docket No. 21] was entered.

12. Since the Petition Date, the Debtor has not:

- Responded to the Involuntary Petition;

- Appeared or participated in this case in any way whatsoever;

- Filed an appearance of counsel;

- Filed a creditor matrix (it is already well past the court-imposed deadline to do so);

- Filed its schedules;

- Filed its statement of financial affairs;

- Responded to Rule 2004 discovery issued by the alleged secured creditor, the Bank; or

- Appeared at a Rule 2004 deposition noticed by the Bank.

13. On June 6, 2022, the Committee was formed.

**FACTS SUPPORTING THE APPOINTMENT OF A CHAPTER 11 TRUSTEE**

14. In support of its Motion, the Committee refers to and incorporates by reference the factual averments set forth in the *Response of Jesse Root to Motion of Tandem Bank to Dismiss Case* [Docket No. 41] ("Jesse's Response").

15. Jesse Root ("Jesse") is a son of the Debtor's founder and a 50% shareholder of the Debtor. Jesse began working at the Debtor in 2008, ultimately becoming its Vice President of Sales in charge of the entire sales function for the Debtor. As such, Jesse has a deep and historical understanding of the Debtor's business operations. Jesse's father, Gary, had been the sole shareholder of the Debtor until the shares were transferred to Jesse and his brother as equal 50% owners.

16. In 2017, when Jesse's father passed away, Jesse's brother sold his 50% ownership interest to Jessica Mendoza who remains a 50% shareholder with Jesse. Upon acquiring her ownership stake, Jessica also took on the role of CEO.

17. After Ms. Mendoza acquired her shares and took on a management role at the company, Jesse began to notice various financial irregularities at the business. As a result, in his role as a 50% shareholder, Jesse requested that Ms. Mendoza provide certain financial information and access to the company's books and records. Rather than share the requested financial information, Ms. Mendoza fired Jesse from his longtime role with the company he co-owns.

18. Subsequently, Jesse engaged legal counsel which hired a private investigator to investigate use of funds by the Debtor. The investigator's findings are alarming. The Committee understands that the investigator uncovered improper transfers of funds from the Debtor to insiders in the past approximately one-and-one-half years totaling in excess of $1.8 million. Specifically,

5

of the $1.8 million that was transferred to insiders during that time period, nearly $600,000 went to Ms. Mendoza and another more than $1.2 million went to her boyfriend, Robert Taitz. It is noteworthy that, on information and belief, Ms. Mendoza never received anywhere near $600,000 in compensation for her role at the company since she acquired her shares and began working at the business. In addition, payments to Ms. Mendoza totaling that amount cannot be distributions because Jesse, as an equal shareholder with Ms. Mendoza, would have been entitled to receive the same distributions as her, but he did not. Further, the more than $1.2 million that was transferred to her boyfriend was not, on information and belief, earned compensation or payments in satisfaction of any debt owed by the Debtor to Mr. Taitz. As such, these payments would appear to be fraudulent transfers that are subject to avoidance and recoverable for the benefit of the estate and its creditors. As stated above, this amount far exceeds the approximately $600,000 – 700,000 the Committee understands the Bank claims to be owed. Further investigation during the course of this bankruptcy proceeding could reveal additional recoveries that would be available to the estate and its creditors through other avoidance actions.

19. Aside from transfers, there is ample information to conclude that the Debtor continues to operate.[2] As noted in Jesse's Response, Jesse and his counsel have independently undertaken efforts to confirm the continued operation of the Debtor's business. Details regarding their informal investigation are provided in Jesse's Response. A chapter 11 trustee must take charge of the Debtor's business operation and its obligations in this bankruptcy case. However, at initial blush, it could be that the Debtor's current management continues to operate the Debtor for its own benefit, without accounting to this Court or the bankruptcy estate for revenues that continue to be generated, thus thumbing their nose at the bankruptcy process. Or it could be that the

---

[2] Of course, it supports the immediate appointment of a chapter 11 trustee if the Debtor continues to operate without accounting to the estate, which the Committee believes might be the case.

6

Debtor's current management is running a competing business, possibly using assets of the estate to do so, thus creating an alter ego claim, among other potential claims.

20. In addition, members of the Committee have both driven to and observed obvious business activities taking place at the Debtor's main facility and have placed phone calls to the Debtor's business to confirm willingness and ability to continue to take orders. The immediate appointment of a chapter 11 trustee is both warranted and necessary to preserve and protect the assets of the estate and the value of the Debtor's business so that the chapter 11 process can run its course with a meaningful opportunity for a reorganization or sale of the business that would likely provide a meaningful recovery for all creditors. This cannot be accomplished with current management in place: a chapter 11 trustee must be placed at the helm of this operation in order to preserve, protect and create value.

21. The members of the Committee – each a vendor with a longstanding business relationship with the Debtor – have been engaged in business in the lighting industry for years and have a deep knowledge of the industry. As a result of that deep knowledge and experience of the industry, and specifically of the Debtor's business, the Committee believes that there is real value in the business as a going concern – value that can be realized through a reorganization or sale of the business, provided that competent and experienced management is put in place to run the Debtor through a chapter 11 process until a reorganization or sale. In addition, the Committee understands that Jesse, with his deep understanding of the Debtor's business, his intimate knowledge of the industry due to his family's involvement for decades, and his customer relationships stemming from his role in charge of sales for years at the company, is willing and interested in assisting a chapter 11 trustee in running the business to a reorganization or sale, and

that he also would be willing to discuss a role with the company with a buyer which further enhances the company's value and saleability.

## LEGAL AUTHORITY

22. Section 1104(a) of the Bankruptcy Code provides:

> (a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court **shall** order the appointment of a trustee—
>
> (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or
>
> (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

11 U.S.C. § 1104 (emphasis added). Thus, there are two avenues to appointment: for cause via § 1104(a)(1), and the "interests of creditors" standard via § 1104(a)(2).

23. The evidentiary standard for an appointment of a Chapter 11 trustee is preponderance of the evidence. *See Synovus Bank v. Brooks (In re Brooks)*, 448 B.R. 483, 489 (Bankr. N.D. Ga. 2013); *see also Keeley & Grabanski Land P'ship v. Keeley (In re Keeley & Grabanski Land P'ship)*, 455 B.R. 153, 163 (B.A.P. 8th Cir. 2011) ("[T]he proper standard for a party seeking the appointment of a Chapter 11 trustee is preponderance of the evidence."). Moreover, the decision of whether to appoint a trustee is vested in discretion of the bankruptcy court, and is reviewed on an abuse of discretion standard. *In re Intercat, Inc.*, 247 B.R. 911, 920 (Bankr. S.D. Ga. 2000); *but see In re YC Atlanta Hotel, LLC*, 630 B.R. 348, 365 (Bankr. N.D. Ga. 2021) (noting that this discretion is limited to findings of "cause" or "best interest." If one/both found, there is no choice but to appoint a trustee).

24. As courts in this District have noted, satisfying the standard for appointment essentially forces the court's hand. *See, e.g.*, *Intercat*, 247 B.R. at 923 ("Having concluded that "cause" has been established … the Court *shall* order the appointment of a trustee."). Moreover, appointment of a chapter 11 trustee is critical in order "to preserve the integrity of the bankruptcy process and to insure that the interests of the creditors are served." *Id.* at 920.

25. Section 1104(a)(1) specifically lists "fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case" as several non-exclusive examples of "cause." Courts in this district have previously found that "[w]hile current management may bring talents to the business that may contribute to its success, their fiscal and operational abuses convince the Court that they lack the business acumen and discipline to institute the fiscal and managerial controls and procedures necessary to turn this enterprise around" and thus requiring the assistance of a chapter 11 trustee. *In re La Sherene, Inc.*, 3 B.R. 169, 175 (Bankr. N.D. G.A. 1980). Furthermore, "[f]uture plans, revealed by current management through testimony or much harder evidence, will not condone past management frauds, dishonesty, gross mismanagement, or incompetence so as to overcome the statutory requirement of Section 1104(a)(1) for the appointment of a trustee." *Id*.

26. Other factors affecting a court's decision to appoint a chapter 11 trustee include self-dealing by management or waste or squandering of corporate assets. *Crescive Landscape Mgmt., Inc. v. PHDC, LLC (In re PHDC, LLC)*, No. 03-93397, 2004 WL 5846712, at *3 (Bankr. N.D. Ga. Apr. 28, 2004) (Bihary, J.) (citing *In re Intercat, Inc.*, 247 B.R. 911, 920-21 (Bankr. S.D. Ga. 2000) (Davis, J.).

27. "Courts may also appoint a trustee under § 1104(a)(2) when it is in the best interest of creditors. Under § 1104(a)(2), the Court tries to determine whether the benefits to the estate

will outweigh the costs involved in appointing a trustee." *Crescive Landscape Mgmt., Inc. v. PHDC, LLC (In re PHDC, LLC)*, No. 03-93397, 2004 WL 5846712, at *3 (Bankr. N.D. Ga. Apr. 28, 2004) (Bihary, J.) (citing In re SunCruz Casinos, LLC, 298 B.R. 821, 829 (Bankr.S.D.Fla.2003); 7 Collier on Bankruptcy ¶ 1104.02[3][d][ii] (15th ed.2003)). A debtor-in-possession stands in a trust relationship with the estate and creditors, and is prohibited from self-dealing and acting in a manner that could damage the estate, harm creditors, or hinder a successful reorganization of the business. *Microwave Products*, 102 B.R. at 671 (citing *In re Sharon Steel Corp.*, 86 B.R. 455 (Bankr. W.D.Pa. 1988)).

28. All of these factors are applicable in the instant case for the reasons set forth below. Accordingly, the Court should grant the Committee's motion under either section 1104(a)(1) or (a)(2).

       1. <u>*Appointment "for Cause" in this Case Pursuant to 11 U.S.C. § 1104(a)(1)*</u>

29. As outlined above, 11 U.S.C. § 1104(a)(1) identifies four bases upon which courts may find "cause": fraud, dishonesty, incompetence, and gross mismanagement. This list, however, is not exhaustive. *Intercat*, 247 B.R. at 920–21 (citing and discussing cases across various jurisdictions finding the same). Additional factors on which the appointment decision turns include:

   1) Materiality of the misconduct;

   2) Evenhandedness or lack of same in dealings with insiders or affiliated entities vis-a-vis other creditors or customers;

   3) The existence of pre-petition voidable preferences or fraudulent transfers;

   4) Unwillingness or inability of management to pursue estate causes of action;

   5) Conflicts of interest on the part of management interfering with its ability to fulfill fiduciary duties to the debtor;

10

6) Self-dealing by management or waste or squandering of corporate assets.

*Id.* at 921.

30. Potentially relevant to this matter is *In re PHDC, LLC*, which focused on factor 6 above and specifically noted that appointment of a trustee under § 1104(a)(1) is appropriate where the debtor has diverted funds or failed to explain the diversion of funds. *In re PHDC, LLC*, No. 03-93397, 2004 WL 5846712, at *3 (Bankr. N.D. Ga. Apr. 28, 2004) (citing *In re PRS Ins. Group, Inc.*, 274 B.R. 381 (Bankr. D. Del. 2001)). The same decision also noted that "cause" can be found where there is a history of transactions between the debtor and related companies, as well as where the debtor has failed to keep adequate records and make prompt and complete reports. *Id.* (citing *In re Oklahoma Refining Co.*, 838 F.2d 1133, 1136 (10th Cir. 1988)).

31. Another court noted that "fiscal and operational abuses" were sufficient to overcome the presumption in favor of current management and warrant the assistance of a Chapter 11 trustee. *In re La Sherene, Inc.*, 3 B.R. 169, 175 (Bankr. N.D. Ga. 1980). Yet another held that while a certain amount of pre-petition mismanagement may not be sufficient appointment grounds, "continuing mismanagement of the affairs after the filing date is evidence of the need for the appointment of a trustee." *YC Atlanta Hotel*, 630 B.R. at 366.

32. In this case, "cause" clearly exists for the appointment of a chapter 11 trustee. In fact, the bases are obvious. At a minimum, both fraud and dishonesty are present by virtue of:

- The more than $1.8 million in prepetition transfers to insiders that have been discovered to date;
- Current management's complete failure to participate in the bankruptcy process, notwithstanding being served properly with the Involuntary Petition;
- Current management continuing to run the Debtor's business – or potentially a competing business using estate assets – without accounting to the estate or reporting to the Court; and

11

- Apart from the significant monetary transfers, the Committee has learned that office furniture and related assets were recently removed from office space previously occupied by the Debtor.

33. Consideration of additional factors also militates strongly in favor of appointment of a chapter 11 trustee:

- The misconduct is material:
    - Current management transferred significant amounts from the Debtor to line their own pockets, all while leaving its vendors and its bank unpaid;
    - Current management continues to run the Debtor's business for its own benefit while this bankruptcy case is pending;
- Lack of evenhanded dealings between insiders and other creditors:
    - Current management lined their own pockets while not paying their vendors;
- Obvious prepetition voidable fraudulent transfers made by Debtor's current management to themselves clearly exist;
- Current management certainly would be unwilling, and has a conflict with, pursuing estate causes of action, including fraudulent transfers and possible alter ego claims, among others, because those causes of action are against the Debtor's current management; and
- Current management has engaged in obvious self-dealing by transferring over $1.8 million to themselves and by continuing to run the Debtor's business postpetition for their own benefit.

34. Based on all of the foregoing, because "cause" plainly exists, this Court "shall" appoint a chapter 11 trustee: under section 1104(a), the appointment of a chapter 11 trustee is mandatory once the Court finds that "cause" exists.

    2. *Appointment for the "Best Interest of Creditors" in this Case Pursuant to 11 U.S.C. § 1104(a)(2)*

35. As also mentioned above, courts may also appoint a trustee when it is best interest of the creditors, pursuant to 11 U.S.C. § 1104(a)(2). Under this standard, the court must determine whether the benefits to the estate will outweigh the costs involved in appointing a trustee. *PHDC*,

12

2004 WL 5846712, at *3. This standard is flexible, and the court should consider the "practical realities and necessities of the case." *YC Atlanta Hotel* 630 B.R. at 370. Under this standard, courts consider the following factors:

(1) the trustworthiness of the debtor;

(2) the debtor in possession's past and present performance and prospects for the debtor's rehabilitation;

(3) the confidence–or lack thereof–of the business community and of creditors in present management; and

(4) the benefits derived by the appointment of a trustee balanced against the cost of the appointment.

*Id.* (citing *In re Eurospark Indus., Inc.*, 424 B.R. 621, 627 (Bankr. E.D.N.Y. 2010)).

36. No showing of wrongful behavior on the part of management is required, as long as interested parties can show a meaningful benefit from the appointment of a trustee. *YC Atlanta Hotel*, 630 B.R. at 365. Rather, this section allows for an "exercise of a spectrum of discretionary powers and equitable considerations, including a cost-benefit analysis." *Id.* (citing *In re SunCruz Casinos, LLC*, 298 B.R. 821, 829 (Bankr. S.D. Fla. 2003)).

37. Nevertheless, the conduct of debtor's management can certainly be relevant to an interests determination. One court found that an existing conflict of interest of management indicated that an appointment would clearly be in the best interests of creditors. *Matter of Fiesta Homes of Georgia, Inc.*, 125 B.R. 321, 326 (Bankr. S.D. Ga. 1990).

38. In this case, the best interests of creditors are clearly supported by the appointment of a chapter 11 trustee. Current management is not trustworthy for all of the reasons stated above. The Debtor has real value based upon the knowledge and experience of both Jesse and members of the Committee: there is a real likelihood that a plan can be confirmed or a going concern sale can be effect with proper oversight, guidance and management by a competent and experienced

13

chapter 11 trustee. The vendor community plainly has significant distaste for current management given their malfeasance. However, those same vendors view significant value in the Debtor's business. As a result, the benefit of a chapter 11 trustee easily outweighs the cost. Without a trustee, this case cannot proceed in any meaningful manner given the Debtor's complete lack of participation in the process. This leaves unsecured creditors with no likelihood of any recovery. On the other hand, the appointment of a chapter 11 trustee manage the Debtor through the bankruptcy process will enable creditors to realize the significant value in this case, both through clawback and other causes of action and through a reorganization or sale of the business.

**WHEREFORE**, the Committee requests that the Court: (i) enter an order directing the appointment of a chapter 11 trustee to perform the duties and responsibilities of a trustee under the Bankruptcy Code; (ii) enter an order directing the Debtor and it respective managers, independent contractors, partners, agents, affiliates, servants, attorneys, officers, directors, shareholders, and employees, and all those persons acting in concert or participation with them, under their control or on their behalf, directly or indirectly, to turn over possession and control of any and all estate property, to the appointed chapter 11 trustee; and (iii) grant any other or further relief in favor of the Committee that this Court deems fair and equitable under the circumstances.

Dated: June 13, 2022

Respectfully submitted,

THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF ATLANTA LIGHT BULBS, INC.

By: /s/Kathleen G. Furr
Kathleen G. Furr (GA Bar No. 589008)
BAKER DONELSON BEARMAN CALDWELL &
BERKOWITZ, PC
3414 Peachtree Road, N.E.
Atlanta, Georgia 30326
(404) 577-6000 (Telephone)
(404) 221-6501 (Facsimile)
kfurr@bakerdonelson.com

*[Proposed] Co-Counsel for the Official Committee of Unsecured Creditors of Atlanta Light Bulbs, Inc.*

-and-

Jason M. Torf (admitted *pro hac vice*)
Brian J. Jackiw (*pro hac vice* pending)
TUCKER ELLIS LLP
233 S. Wacker Dr.
Suite 6950
Chicago, Illinois 60606-9997
(312) 256-9432 (Telephone)
(312) 624-6309 (Facsimile)
jason.torf@tuckerellis.com
brian.jackiw@tuckerellis.com

*[Proposed] Co-Counsel for the Official Committee of Unsecured Creditors of Atlanta Light Bulbs, Inc.*

## CERTIFICATE OF SERVICE

This is to certify that on June 13, 2022, I electronically filed the foregoing *Motion for Appointment of Chapter 11 Trustee* with the Clerk of Court using the CM/ECF system, which automatically sent e-mail notifications of such filing to the below listed attorneys of record:

Thomas Dworschak
Office of the U. S. Trustee
Room 362
75 Ted Turner Drive, SW
Atlanta, GA 30303
thomas.w.dworschak@usdoj.gov

Ronald A. Levine
Levine & Block, LLC
P.O. Box 422148
Atlanta, GA 30342
rlevine@levineblock.com

Scott B. McMahan
Poole Huffman, LLC
Building J, Suite 200
3562 Habersham at Northlake
Tucker, GA 30084
ecf@poolehuffman.com

Leslie M. Pineyro
Jones and Walden, LLC
699 Piedmont Avenue NE
Atlanta, GA 30308
lpineyro@joneswalden.com

Todd J Poole
3562 Habersham at Northlake
Building J, Ste 200
Tucker, GA 30084
todd@poolehuffman.com

Michael D. Robl
Robl Law Group LLC
Suite 250
3754 LaVista Road
Tucker, GA 30084
michael@roblgroup.com

Todd H. Surden
Hartman Simons & Wood
400 Interstate North Parkway SE
Suite 600
Atlanta, GA 30339
todd.surden@hartmansimons.com

Kristen A. Yadlosky
Hartman Simons & Wood
400 Interstate North Parkway SE
Suite 600
Atlanta, GA 30339
kristen.yadlosky@hartmansimons.com

and that I also served the below parties via USPS with proper postage affixed:

Atlanta Light Bulbs, Inc.
2109 Mountain Industrial Blvd
Tucker, GA 30084

American Express Travel Related Services Co., Inc.
c/o Zwicker and Associates, P.C.
Attorneys/Agents for Creditor
P.O. Box 9043
Andover, MA 01810-1041

16

Bryan Kaplan
6065 Roswell Road, Suite 540
Atlanta, GA 30328

CBC Lighting Inc.
Kaplan Legal Services, LLC
6065 Roswell Road, Suite 540
Atlanta, GA 30328

Fanlight Corporation, Inc.
c/o Simpson, Uchitel & Wilson, LLP
P.O. Box 550105
Atlanta, GA 30355-2505

Ford Motor Credit Company, LLC
Drawer 55-953
P.O. Box 55000
Detroit, MI 48255-0953

Hatch Transformers, Inc., d/b/a Hatch Lighting
c/o Simpson, Uchitel & Wilson, LLP
P.O BOX 550105
Atlanta, GA 303055-2505

Worldwide Specialty Lamp, LLC
c/o Bryan Kaplan, Esq.
6065 Roswell Road, Suite 540
Atlanta, GA 30328


By: /s/Kathleen G. Furr
Kathleen G. Furr (GA Bar No. 589008)

*[Proposed] Co-Counsel for the Official Committee of Unsecured Creditors of Atlanta Light Bulbs, Inc.*

17